UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

                :

**JENNIFER GARCIA JIMENEZ,** *on behalf of her*
*minor daughter* **"J.M.",** **FRANKLIN**
**CAMPOVERDE,** and **JOAN MANUEL**
**JIMENEZ,**

                        Plaintiff,

          – against –

**COUNTY OF SUFFOLK, SUFFOLK COUNTY**
**POLICE DETECTIVE SOLON PARKER,**
**SUFFOLK COUNTY POLICE**
**COMMISSIONER RODNEY K. HARRISON,**
**SUFFOLK COUNTY DISTRICT ATTORNEY**
**RAYMOND A. TIERNEY, SUFFOLK**
**COUNTY ASSISTANT DISTRICT**
**ATTORNEY WILLIAM C. NASH, POLICE**
**OFFICER DANIEL LILLIS, TOWN OF EAST**
**HAMPTON, EAST HAMPTON TOWN**
**POLICE CHIEF MICHAEL D. SARLO, EAST**
**HAMPTON TOWN POLICE DETECTIVE**
**RYAN HOGAN, EAST HAMPTON TOWN**
**SUPERVISOR PETER VAN SCOYAC,**
**"STATE" "DOES" 1-20** and **"FEDERAL"**
**"ROES" 1-20,**

                      Defendants.

**MEMORANDUM DECISION AND**
**ORDER**

23-CV-9476 (AMD) (RLM)

------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The plaintiffs assert various claims pursuant to 42 U.S.C. § 1983, *Bivens v. Six Unknown*

*Fed. Narcotics Agents*, 403 U.S. 388 (1971), and state law, arising out of the October 5, 2022

execution of a search warrant at the plaintiffs' Montauk home. Before the Court are the

defendants' motions to dismiss the amended complaint. (ECF Nos. 44, 46, 47, 62.) For the

reasons that follow, the motions are granted in part and denied in part, and the plaintiffs' request

for leave to amend a second time is denied.

# BACKGROUND[1]

## a.    The Search of 361 Flamingo Avenue

On October 4, 2022, defendant Solon Parker, a Suffolk County detective, signed an affidavit in support of an application for a no-knock search warrant for 361 Flamingo Avenue in Montauk, New York, where the plaintiffs lived.  (ECF No. 34 ¶ 44; ECF No. 44-2.)  Parker affirmed that there was "probable cause to believe that Cocaine and/or evidence related to the possession and the distribution of same reside at the premises . . . ."  (ECF No. 44-2 at 2.)  Parker alleged that Anuedis Garces-Medrano, a target of a task force investigation into a cocaine distribution enterprise, "resided at this location" until "approximately one month ago."  (*Id.* at 5.)  Additionally, Parker described an undercover drug purchase, in which the seller left from 361 Flamingo Avenue to meet the undercover buyer and returned to the address immediately after selling the drugs.  (*Id.*)

Based on the affidavit, Justice Steven A. Pilewski of the New York Supreme Court signed a search warrant on October 4, 2022.  (ECF No. 34-3.)  The warrant authorized the search of the premises at 361 Flamingo Avenue for the following:

> Cocaine; U.S. currency as proceeds of the illicit drug business; books and records reflecting transactions of the illicit drug business; cellular telephones; drug paraphernalia related to the storage and distribution of controlled substances; items constituting indicia of knowing possession, ownership or control of the premises or of the contraband including, but not limited to, bills, receipts and other personal effects indicating such ownership, knowledge or control.

(*Id.* at 3.)  In addition, the warrant said that "361 Flamingo Avenue is believed to be occupied by Anuedis Garces-Medrano."  (*Id.*)

---

[1] The facts are drawn from the allegations in the plaintiffs' amended complaint, documents incorporated by reference into the amended complaint, documents appended or integral to the amended complaint. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  The Court draws all reasonable inferences in the plaintiffs' favor and accepts the factual allegations in the amended complaint as true for purposes of this motion.  *See Town of Babylon v. Fed Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

The following day, "various law enforcement officials" executed the warrant. (ECF No. 34 ¶ 45.) Officers in "military uniforms" "barged into" the house at 6:00 a.m., and "pointed guns at" plaintiffs Franklin Campoverde and Juan Manuel Jimenez, as well as at J.M., plaintiff Jennifer Garcia Jimenez's 11-year-old daughter. (*Id.* ¶ 46.) One set of officers asked Campoverde, "where the drugs and money were, while holding a gun to his face." (*Id.* ¶ 48.) Another group "used a battering ram" to "barge into the bathroom," causing the door to hit Jimenez and cut his foot. (*Id.* ¶ 49.) The officers handcuffed Jimenez and Campoverde, injuring Campoverde's shoulder, and held them at the house for over three hours. (*Id.* ¶¶ 48–49, 51.) They did not get medical attention for Jimenez's foot injury, which bled as he remained handcuffed. (*Id.* ¶ 58.) The officials did not respond when Jimenez and Campoverde asked to have their handcuffs loosened. (*Id.* ¶ 51.)

Garcia Jiminez was not at 361 Flamingo Avenue when the warrant was executed, but the officers detained her outside the house when she arrived to check on J.M. (*Id.* ¶ 59.) The officers kept J.M. in the house, separated from her mother, for nearly an hour and did not allow her to use the bathroom. (*Id.* ¶ 60.) The officers ultimately brought J.M. out of the house and let her stand with her mother, but "forced [them] to stand in the rain" and still did not let them use the bathroom. (*Id.* ¶¶ 63–65.)

Officers seized "cellphones, marriage licenses, car titles, a 'Nokia camera,'" computers, and approximately $14,000 in cash during the search. (*Id.* at ¶¶ 53–54.) "The officers did not leave any receipts nor any inventory." (*Id.* ¶ 55.) Despite "strenuous efforts" to recover the seized property, $14,000 of the seized money remains unaccounted for and has not been returned to the plaintiffs. (*Id.* ¶ 74.) The plaintiffs' efforts to recover these funds included initiating an internal investigation within the Suffolk County Police Department (*id.* ¶ 76), emailing and

calling the county police commissioner (*id.* ¶ 77), and emailing the chief of the civil division in the United States Attorney's Office for the Eastern District of New York (*id.* ¶ 78). None of these avenues proved fruitful. The seized computers and cellphones were returned, but they were damaged and broken. (*Id.* ¶ 75.)

### b. Procedural History

The plaintiffs filed this action on December 26, 2023. (ECF No. 1.) The original complaint named eight individual defendants, all of whom worked for Suffolk County, the Town of East Hampton, or the Town of Southold: Solon Parker, a detective in the Suffolk County Police Department; Rodney K. Harrison, the Suffolk County Police Commissioner; Raymond A. Tierney, the Suffolk County District Attorney; William C. Nash, a Suffolk County Assistant District Attorney; Daniel Lillis, a police officer in the Southold Police Department; Michael D. Sarlo, the East Hampton Police Chief; Ryan Hogan, a detective in the East Hampton Police Department; and Peter Van Scoyac, the East Hampton Town Supervisor. In addition, the complaint named Suffolk County and the Town of East Hampton as defendants. Finally, the plaintiffs asserted claims against Does 1–20 and Roes 1–20, who the plaintiffs allege are the unknown state and federal officers, respectively, that executed the search warrant.[2]

The plaintiffs brought a litany of claims against these defendants in a nine-count complaint that spanned more than 80 pages and included 15 exhibits. On February 14, 2024, the

---

[2] On September 3, 2024, Magistrate Judge Steven Locke denied the plaintiffs' fourth motion for an extension of time to serve the unnamed federal defendants and dismissed the claims against those defendants without prejudice. (*ECF Order dated Sept. 9, 2024.*) Judge Locke explained that the plaintiffs had not served either the unidentified individual defendants or the United States, as required by Rule 4(i). (*Id.*) He also noted that he had already extended the time to serve on three prior occasions, which gave the plaintiffs over seven months to identify and serve the Roe defendants. (*Id.*) Finally, Judge Locke held that the plaintiffs would not be prejudiced by the denial because their claims against the federal defendants would be timely for more than a year. (*Id.*; *see also Viera v. United States*, No. 24-CV-1862, 2024 WL 2219434, at *3 (S.D.N.Y. May 14, 2024) (statute of limitations for *Bivens* claim is three years for conduct that occurred in New York).)

Town of East Hampton answered the complaint on behalf of the municipality and defendants Sarlo, Hogan, and Van Scoyac (collectively the "Town defendants"). (ECF No. 18.) On March 20, 2024, defendant Tierney requested a pre-motion conference to discuss his anticipated motion to dismiss. (ECF No. 23.) The Court ordered the remaining defendants to state whether they joined in the request. (*ECF Order dated Mar. 21, 2024.*) Suffolk County, on behalf of the municipality and defendants Harrison, Nash, and Parker (collectively the "County defendants") joined the request (ECF No. 24), and the Town defendants explained that they joined any request that challenged the complaint under Federal Rule of Civil Procedure Rule 8, even though they had already filed their answer (ECF No. 27).

The Court held a pre-motion conference on April 24, 2024, at which it expressed its concerns about the labyrinthine complaint and cautioned the plaintiffs that the complaint as drafted did not provide the defendants with sufficient notice of their individual conduct and raised inappropriate arguments at the expense of potentially meritorious claims. (*See, e.g.*, ECF No. 53 at 10:7–16, 13:7–16.) The Court suggested — though did not order — that the plaintiffs amend their complaint to focus their factual allegations and to narrow their claims before the parties briefed the defendants' anticipated motions to dismiss. (*Id.* at 13:17–14:2.) To ensure that the amended complaint would comply with Federal Rule of Civil Procedure 8, the Court ordered that the amended complaint not exceed 50 pages. (*Minute Entry dated Apr. 24, 2024*.)

The plaintiffs filed an amended complaint on June 10, 2024. (ECF No. 34.) The amended complaint is precisely 50 pages, but there is no relevant difference between the original and the amended complaint. The amended complaint has the same number of paragraphs (269), claims (nine), and exhibits (15). It appears that plaintiffs succeeded in cutting 30 pages from the original complaint by adjusting the font size and page margins, excising block quotes, and

shortening certain phrases.  (*Compare, e.g.*, ECF No. 1 ¶ 3 ("The causes of actions also include") *with* ECF No. 34 ¶ 3 ("The claims include"); ECF No. 1 ¶ 137 (quoting at length from a statement issued by the Department of Justice, which was also attached as an exhibit) *with* ECF No. 34 ¶ 137 (removing quoted language and stating that the same document is attached as an exhibit).)  Simply put, the amended complaint did not remedy the serious deficiencies in the first complaint.

The Court set a briefing schedule for the motions to dismiss (*ECF Order dated June 24, 2024*), and granted the remaining defendants' motions to join the briefing schedule (*ECF Order dated June 26, 2024* (defendant Tierney); *ECF Order dated July 1, 2024* (defendant Lillis); *ECF Order dated July 1, 2024* (Town defendants)).[3]  Each of the defendants moved to dismiss.  (ECF Nos. 44, 46, 47, 62.)  The plaintiffs opposed those motions in one brief, as the Court directed.  (ECF No. 64.)  The County defendants, the Town defendants, and defendant Tierney replied.  (ECF Nos. 65, 68, 69.)  The Court held oral argument on March 4, 2025, and asked the County defendants, the Town defendants, and the plaintiffs to file supplemental letter briefs on the potential application of *Ketcham v. City of Mount Vernon*, 992 F.3d 144 (2d Cir. 2021) to the plaintiffs' excessive force claims, which the parties did.  (*ECF Order dated Mar. 4, 2025*; ECF Nos. 74, 75, 76, 77.)

---

[3] Because defendant Lillis answered the amended complaint before filing his motion to dismiss (*see* ECF No. 37), his motion "must be deemed a motion for judgment on the pleadings pursuant to Rule 12(c)." *United States v. Pelt*, No. 11-CV-6156, 2013 WL 1173898, at *2 (E.D.N.Y. Mar. 18, 2013).  This procedural detail has no effect on the Court's evaluation of Lillis's motion because "[a] motion for judgment on the pleadings pursuant to Rule 12(c) is assessed under the same standard applicable to a pre-answer motion to dismiss for failure to state a claim." *Stephens v. Maxx Properties,* No. 11-CV-2575, 2012 WL 1949339 at *2 (E.D.N.Y. May 29, 2012) (citing *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010)).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although detailed factual allegations are not required, the pleading standard "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "A motion for judgment on the pleadings pursuant to Rule 12(c) is assessed under the same standard applicable to a pre-answer motion to dismiss for failure to state a claim." *Stephens*, 2012 WL 1949339 at *2.

## DISCUSSION

The Court "is not required to make arguments for [] represented part[ies]" like the plaintiffs in this action. *Toran v. Cnty. of Nassau*, No. 21-CV-5159, 2024 WL 1158982, at *7 (E.D.N.Y. Mar. 18, 2024). Moreover, "[t]his Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that [a] claim should be dismissed." *Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (collecting cases); *see also Chan v. City of New York*, No. 19-CV-7239, 2023 WL 2734681, at *8 (E.D.N.Y. Mar. 31, 2023) (dismissing claim as abandoned where the plaintiff "d[id] not respond to defendants' argument that the allegations in plaintiff's complaint" failed to state a claim); *Belfon v. Credit Check Total Consumerinfo.com, Inc.*, No. 18-CV-408, 2018 WL 4778906, at *8

(E.D.N.Y. Oct. 1, 2018) ("District courts in this circuit have found that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims.'" (quoting *Youmans v. Schiro*, No. 12-CV-3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013) and collecting cases)).

The amended complaint is extremely difficult to follow. Nevertheless, guided by the above principles and the parties' briefing, the Court understands the plaintiffs to assert claims against the individual defendants under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment (Count I); for excessive force in the course of executing the search warrant — specifically, the way officers handcuffed two of the plaintiffs and the force they used to open a bathroom door, which hit one of the plaintiffs (Count II); for due process violations relating to the affidavit in support of the search warrant and the defendants' conduct in the aftermath of the search, including depriving the plaintiffs' of their property and defaming them (Count IV); for various state torts (Count V); for malicious abuse of criminal process (Count VI); for failure to train (Count VI); and for failure to intervene during the execution of the search warrant (Count VII).[4] The plaintiffs also assert claims for *Monell* liability against Suffolk County and the Town of East Hampton on the failure to train and intervene counts, and perhaps the excessive force and due process counts. Finally, the plaintiffs ask the Court to issue declaratory relief holding that New York State Criminal Procedure Law §§ 245.20(7), 245.30, 690.50(4) and 690.50(5) are unconstitutional (Count VIII), and that no-knock warrants — as currently administered —

---

[4] The plaintiffs also style Counts I, II, III, IV, VI, VII, and IX as *Bivens* claims. "[T]he only proper defendant for a *Bivens* claim is an individual federal official." *Viera*, 2024 WL 2219434, at *5. Because Judge Locke dismissed the claims against the federal defendants without prejudice under Rule 4(m), the amended complaint does not state any viable *Bivens* claim. (*See* ECF No. 34 ¶ 4 (stating that the plaintiffs brought *Bivens* claims against only the federal Roe defendants in their individual capacities).)

violate substantive and procedural due process (Count IX).  The Court deems all other claims abandoned. [5]

## I.    Section 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.  To state a § 1983 claim, a plaintiff must allege: "(1) that the challenged conduct was 'committed by a person acting under color of state law'; and (2) that such conduct 'deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States.'"  *Gazzola v. Cnty. of Nassau*, No. 16-CV-909, 2016 WL 6068138, at *4 (E.D.N.Y. Oct. 13, 2016) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

### a.    Personal Involvement

The Court first addresses the individual defendants' arguments that at least some of the claims against them should be dismissed because the plaintiffs do not sufficiently plead the defendant's personal involvement in the constitutional violations.

The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Back v. Hastings On Hudson Union Free*

---

[5] The plaintiffs abandoned (at least) the following claims, to the extent that their complaint could possibly be read to allege them: a § 1983 right of access claim (Count I) (*see* ECF No. 44-4 at 6–8; ECF No. 46-1 at 6–8; ECF No. 64 at 31–32); a § 1983 claim that the search warrant was invalid under the Fourth Amendment for lack of probable cause (Count II) (*see* ECF No. 44-4 at 9–10; ECF No. 46-1 at 14–15; ECF No. 64 at 32–34); a § 1983 claim for deliberate indifference to medical need (Count III) (*see* ECF No. 44-4 at 15–16; ECF No. 64 at 34–38); a § 1983 claim sounding in substantive due process (Count III) (*see* ECF No. 44-4 at 16; ECF No. 64 at 34–38); a § 1983 claim based in equal protection related to statements made to the press (Count III) (*see* ECF No. 44-4 at 16–17; ECF No. 64 at 34); a § 1983 claim against Tierney sounding in equal protection (Count VIII) (*see* ECF No. 46-1 at 14–15; ECF No. 64 at 47).

*Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).  Therefore, to state a claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676); *see also Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) ("If a defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant." (emphasis in original).)  Moreover, in *Tangreti v. Bachmann*, the Second Circuit held that "there is no special rule for supervisory liability," and a plaintiff must still satisfy the same requirements of personal involvement to state § 1983 claims against a defendant in a supervisory role.  *Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *32 (S.D.N.Y. Mar. 26, 2021) (quoting *Tangreti*, 983 F.3d at 618).

Because "[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue," the Court considers an individual defendant's alleged personal involvement in each constitutional deprivation separately.  *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).  Accordingly, "[p]leadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim" under § 1983.  *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017); *see also id.* (dismissing claims when the complaint "simply recite[d] the same conclusory, formulaic, and non-substantive allegations as to each of these Defendants"); *Thomas v. Venditto*, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013) ("[I]t is insufficient for the plaintiffs to rely on group pleading against these defendants without making specific factual allegations against them." (alterations adopted)); *Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) (dismissing § 1983 claims that relied on group pleading).

i.    *Detective Parker*

The gravamen of the plaintiffs' allegations against Parker is that he made false statements in the affidavit in support of the search warrant (the "Parker Affidavit").  (ECF No. 34 ¶¶ 44, 131, 138, 178.)  The complaint also states that Parker signed an inventory statement, which the plaintiffs claim was fabricated.  (*Id.* ¶¶ 68, 76, 249.)  Finally, the complaint suggests — though does not allege directly — that Parker had policy-making authority.  (*Id.* ¶ 120.)  However, for the reasons discussed below, the plaintiffs do not plausibly allege a constitutional violation related to Parker's personal involvement in signing the affidavit or inventory, and so those claims are dismissed.

Separately, the plaintiffs do not plead that Parker was present at 361 Flamingo Avenue when the officers executed the warrant, and they do not allege that he personally used excessive force or that he witnessed any officer using excessive force.  Therefore, the causes of action related to excessive force, including Count II (Fourth Amendment) and Count VII (failure to intercede), must be dismissed against Parker.

Additionally, while the complaint states that Parker and others "transgressed Plaintiffs' [First] Amendment rights by their conjoined conduct, customs, policies and procedures" (*id.* ¶ 103), this conclusory allegation does not plead that Parker did anything specific to retaliate against the plaintiffs for exercising their First Amendment rights.  Accordingly, Count I (First Amendment) must also be dismissed against Parker.

Because Parker is not a supervisor and the plaintiffs do not allege that he had any duty to train or to set county policy, Count VIII (failure to train and supervise) must be dismissed against him, too.

ii.   *Commissioner Harrison*

The plaintiffs' only specific allegation about Harrison is that he did not respond to counsel's calls or emails related to the plaintiffs' attempt to recover the $14,000, and generally, that he did not compel officers in the Suffolk County Police Department to cooperate with the internal investigation.  (ECF No. 34 ¶¶ 76–77, 87.)  The plaintiffs also allege that Harrison refused to do a complete investigation into the seized property and "thwart[ed]" the plaintiffs' attempts to recover their property.  (*Id.* ¶¶ 113, 115.)

The remaining allegations that mention Harrison are conclusory, non-substantive and do not plead anything specific that Harrison did to cause any alleged constitutional violation.  (*See, e.g.*, *id.* ¶¶ 168 (Harrison and others "caused to be confiscated over $14,000.00"), 203 (Harrison and others "deliberately, intentionally, maliciously, and recklessly failed to adequately train and supervise" officers "on the fundamental core principles of police work").)  Thus, these claims are dismissed.

While the plaintiffs plead Harrison's personal involvement in the conduct underlying Counts I and III — that he obstructed the internal investigation in violation of the due process clause and refused to help the plaintiffs collect their property in retaliation against Campoverde for initiating the internal investigation, in violation of the First Amendment — as explained below, the plaintiffs do not plausibly allege a constitutional violation related to this conduct, so those claims against Harrison are dismissed.

iii.   *District Attorney Tierney*

The complaint alleges that Tierney issued a press release that falsely implied that the plaintiffs were drug dealers and did so "merely to achieve some self-promotional objective." (ECF No. 34 ¶¶ 70, 73, 81, 97.)  The plaintiffs also contend that Tierney obstructed their

12

attempts to recover their seized property and to learn additional information about the October 5, 2022 search — at least in part to retaliate against Campoverde for initiating an internal investigation. (*Id.* ¶¶ 86–87, 89, 104–07, 113, 115.) Finally, the complaint asserts that Tierney "delegated" certain duties and "reposed confidence" in Parker, Nash, and others who were responsible for securing the search warrant. (*See, e.g.*, *id.* ¶¶ 139, 142, 145–50.)

Therefore, the plaintiffs plead Tierney's personal involvement only in the alleged constitutional violations underlying Counts I and III — that Tierney obstructed the internal investigation and the plaintiffs' attempts to recover their property to retaliate against Campoverde for initiating the investigation and defamed the plaintiffs in a press release. However, for the reasons discussed below, the plaintiffs do not plausibly allege a constitutional violation related to this conduct, and so those claims against Tierney are dismissed.

The remaining allegations against Tierney are conclusory and, even when accepted as true, insufficient to state a claim. The plaintiffs' assertions that Tierney delegated duties related to securing the search warrant are obviously deficient. The complaint does not allege that Tierney delegated these duties outside the standard operation of the district attorney's office; and this "delegate down" theory of liability, where there are no allegations that Tierney personally did anything to secure the warrant, is precisely what the Second Circuit meant when it held that "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618. Accordingly, all the remaining claims against Tierney are dismissed.

### iv. Assistant District Attorney Nash

The plaintiffs claim that Nash was directly involved in investigating the case and misleading the judge who signed the search warrant. (ECF No. 34 ¶ 44.) Yet they do not allege that Nash took any specific actions to secure the warrant, only that he knew that the Parker

Affidavit was "deliberately misleading." (*Id.* ¶ 131.)  The complaint also names Nash in the obstruction and retaliation allegations.  (*Id.* ¶¶ 87–88, 90, 103–05, 113, 115.)  The only specific allegation against Nash is that he wrote the plaintiffs' counsel an email in which he stated that he would "look into this again and send another release to Property for your client at 361 Flamingo and advise." (*Id.* at ¶ 90.)  The other allegations about Nash are conclusory, non-substantive, and do not sufficiently plead his personal involvement in the alleged constitutional violations.  Accordingly, the remaining claims against Nash are dismissed.

While the complaint pleads that Nash personally participated in the constitutional violations underlying Counts I and III — preventing the plaintiffs from recovering their property and retaliating against them — as discussed below, the plaintiffs do not plausibly allege a constitutional violation related to this conduct, and so those claims against Nash are dismissed.

> ### v.   *Officer Lillis*

The few allegations against Lillis are related to the receipt of the seized cash.  (ECF No. 34 ¶¶ 16, 53, 68.)  The plaintiffs claim that Lillis "failed to include any reference to, or any accounting of" the approximately $14,000 that was seized during the search.  (*Id.* ¶ 53.)  They further allege that Lillis "mishandled, converted, trespassed, and/or stole" this money. (*Id.* ¶ 186.)  While these allegations are sufficient to plead Lillis's personal involvement in Count II, for the reasons discussed below, the plaintiffs do not sufficiently allege a constitutional violation, and so those claims against Lillis are dismissed.  And because the complaint does not otherwise plead Lillis's personal involvement, the remaining claims against Lillis are dismissed as well.

vi.    *Chief Sarlo and Detective Hogan*

The complaint's allegations against Sarlo and Hogan are substantively the same.  The plaintiffs alleges that the Doe officers executed the search warrant "with the direct personal involvement of Hogan [and] Sarlo."  (ECF No. 34 ¶ 45.)  The plaintiffs do not specify, however, how Sarlo or Hogan were personally involved.  The closest they come is to suggest that the search warrant was issued "as a result" of the "joint efforts" of Hogan among others.  (*Id.* ¶ 44.)  The complaint also claims that Sarlo and Hogan "caused to be confiscated over $14,000.00" from the plaintiffs and "deliberately failed to provide for the emergency medical services" during the execution of the search warrant.  (*Id.* ¶¶ 94, 168.)  Yet they do not allege that either Sarlo or Hogan were at the scene where the warrant was executed.  They also claim that Sarlo refused to investigate the whereabouts of the seized cash and "thwart[ed]" the internal investigation of the Suffolk County Police Department.  (*Id.* ¶¶ 113, 115.)  But the complaint offers no further description of their conduct.  These allegations are plainly insufficient to establish that these defendants were personally involved in any of the alleged constitutional violations.  Accordingly, all claims against these defendants are dismissed.

vii.    *Town Supervisor/Commissioner Van Scoyac*

The complaint does not allege that Van Scoyac took any specific, individual action.  Indeed, not a single allegation in the complaint (except for his identification as a party) names Van Scoyac alone, without at least two other defendants.  (*See, e.g.*, ECF No. 34 ¶¶ 93, 94, 113,

115, 120, 168.)  Group pleading like this does not give the defendants fair notice of the claims against them.  Accordingly, all claims against Van Scoyac are also dismissed.[6]

### b.    Absolute Prosecutorial Immunity[7]

Tierney and Nash also argue that they are entitled to absolute prosecutorial immunity. (ECF No. 44-4 at 13; ECF No. 46-1 at 5.)  "Prosecutors are absolutely immune from liability in § 1983 suits brought against prosecutorial actions that are 'intimately associated with the judicial phase of the criminal process.'"  *Van de Kamp v. Goldstein*, 555 U.S. 335, 335 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 428, 430 (1976)).  To the extent that a prosecutor is sued in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."  *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).  "[D]istrict courts are encouraged to determine the applicability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery . . . and before assessing whether a plaintiff has sufficiently alleged a constitutional violation."  *Kanciper v. Lato*, 989 F. Supp. 2d 216, 229 (E.D.N.Y. 2013) (quoting *Moye v. City of New York*, 11-CV-316, 2012 WL 2569085, at *4 & n.3 (S.D.N.Y. July 3, 2012)).

Tierney and Nash argue that they are absolutely immune from any claim regarding the validity of the search warrant.  The plaintiffs respond that Tierney and Nash were not acting in

---

[6] In any event, town supervisors "acting in their legislative capacity are immune from civil liability." *Highview Properties D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5, 27 (S.D.N.Y. 2022); *see also Ferreira v. Town of E. Hampton*, 56 F. Supp. 3d 211, 237 (E.D.N.Y. 2014) (East Hampton town supervisor immune from due process claims, where only claimed personal involvement was legislative).

[7] The defendants each argue that they are entitled to qualified immunity on various of the plaintiffs' claims.  Because the Court disposes of the claims to which these arguments are presently relevant on other grounds, the Court does not address the defendants' qualified immunity arguments.  *See Birch v. City of New York*, 184 F. Supp. 3d 21, 28 (E.D.N.Y. 2016) (cautioning that while qualified immunity is a shield from suit, a district court "must approach the issue of qualified immunity with particular caution when it is raised in a motion under Federal Rule of Civil Procedure 12(b)(6)"), *aff'd*, 675 F. App'x 43 (2d Cir. 2017).

their prosecutorial capacities when they engaged in the alleged constitutional violations and are therefore not entitled to absolute immunity.  (ECF No. 34 at 23.)  Under the "functional approach used in this Circuit," the labels a plaintiff stamps on a prosecutor's conduct are irrelevant. *Kanciper*, 989 F. Supp. 2d at 229.  "The ultimate 'question is whether the prosecutors have carried their burden of establishing that they were functioning as advocates when they' engaged in the challenged conduct." *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (cleaned up) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).  "Although the line between a prosecutor's acts as an advocate and as an investigator is often difficult to draw, the key is the degree to which the specific conduct at issue is intimately associated with the judicial phase of the criminal process." *Galgano v. Cnty. of Putnam, New York*, No. 16-CV-3572, 2024 WL 1623401, at *63 (S.D.N.Y. Apr. 15, 2024) (cleaned up).

Courts in this district have held that a prosecutor's "role in the procurement of the search warrants is protected by absolute immunity." *Kanciper*, 989 F. Supp. 2d at 230; *see also Bristol v. Queens Cnty.*, 09-CV-95544, 2018 WL 5077166, at *26 (E.D.N.Y. Mar. 30, 2018), *report and recommendation adopted,* 2018 WL 4328828 (E.D.N.Y. Sept. 11, 2018).  Moreover, the Supreme Court has held that a prosecutor is absolutely immune from claims related to "appear[ing] in court in support of an application for a search warrant and the presentation of evidence at that hearing." *Burns v. Reed*, 500 U.S. 478, 492 (1991).  The same principle applies here; the plaintiffs do not plead that Tierney or Nash "swore that probable cause existed to support" the search. *Kanciper*, 989 F. Supp. 2d at 230; *see also id.* (holding that prosecutor was absolutely immune when he "helped to draft and prepare the search warrant materials").  Indeed, the complaint pleads facts that demonstrate that all of Tierney's and Nash's allegedly illegal conduct took place after the prosecutors believed they had probable cause to search the premises.

(*See* ECF No. 34 140–42.)  Accordingly, these defendants were operating in their prosecutorial function in procuring the October 5th search warrant.

### c.    First Amendment Retaliation Claim

The plaintiffs allege that the defendants retaliated against them for initiating an internal investigation, in violation of their First Amendment rights, by refusing to provide material to which the plaintiffs insist they were entitled.

To plead a First Amendment retaliation claim, a plaintiff must allege: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).  This claim cannot survive the motions to dismiss because the plaintiffs have not sufficiently alleged that Tierney or Nash caused them concrete harm.[8]

As best as the Court can tell, the plaintiffs' theory is this:  Campoverde, exercising his First Amendment right to petition, filed a grievance against the Suffolk County Police Department, which initiated an investigation coordinated by the internal affairs bureau.  (ECF No. 34 ¶ 76.)  Tierney, Nash, and Does then "obstructed . . . and stonewalled" the plaintiffs' attempts to get certain materials, which the plaintiffs wished to provide to the officer in charge of the internal affairs investigation, as well as information that was otherwise "required" for the plaintiffs' anticipated lawsuits in state and federal courts.  (*Id.* ¶¶ 104–05.)  The plaintiffs further allege that "Tierney, Nash, Harrison, [Suffolk] County, [the] Town [of East Hampton], Sarlo, and Van Scoyac deliberately refused to fully investigate and return all of the seized cash" to

---

[8] As detailed above, the allegations in the complaint are insufficient to state a claim against any other defendants.

retaliate against Campoverde for filing a grievance.  (*Id.* ¶ 113.)  This conduct, the plaintiffs say, harmed them because it deprived them of their lost property and violated their First Amendment rights of access to judicial materials and to the courts.  (*Id.* ¶¶ 106–07, 117.)

### i.    First Amendment Right

"The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994).  Courts in this district have "readily conclude[d]" that a "plaintiff's complaint to [an internal affairs bureau] is protected under the First Amendment." *Griffin v. City of New York*, 880 F. Supp. 2d 384, 394 (E.D.N.Y. 2012).  Accepting the plaintiffs' allegations as true, Campoverde engaged in protected conduct when he filed a grievance with the Suffolk County Police Department.

### ii.    Harm

A plaintiff must also allege that a defendant's retaliatory conduct caused an injury, which requires that he "show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Dorsett*, 732 F.3d at 160 (emphasis in original).

The plaintiffs maintain that the defendants did not cooperate in — or sought to undermine — the internal investigation, which deprived the plaintiffs of a "timely, comprehensive IAB report." (*See* ECF No. 64 at 31.)  But the plaintiffs also seem to claim that the defendants' conduct independently violated the plaintiffs' First Amendment rights — specifically, the right to get documents related to the search warrant and the right of access to the courts.  (*See, e.g.*, *id.* ¶ 107 (alleging Tierney "thwarted Plaintiffs' cognizable 1st Amendment . . . right of access . . . [and] interfered with Plaintiffs' ability to file a federal suit.").)

Neither theory of harm is convincing.  First, the plaintiffs do not plead a viable harm to their First Amendment interests — either based on a theory that they were wrongfully denied access to judicial documents or to the courts.  The plaintiffs do not articulate any coherent theory of the harm related to their alleged failure to obtain documents to which they claim they have a First Amendment or common law right.  While the plaintiffs generally assert these interests (in legal arguments that are out of place in a pleading), they do not plead that their inability to obtain these documents caused them any direct harm, only that it prevented them from providing those materials to investigators or judges.  (*Id.* ¶¶ 108–113.)  The plaintiffs cite no case law — and the Court is not aware of any — that supports this theory of harm in the context of a retaliation claim.

Moreover, as Tierney notes, the plaintiffs have already used the state courts to assert their right to the search warrant materials, and the Appellate Division held that they "failed to demonstrate a clear legal right to the relief sought."  *Matter of Weiss v. Pilewski*, 219 A.D.3d 1341, 1341 (2d Dep't 2023), *lv to appeal denied,* 41 N.Y.3d 961.  Therefore, any purported violations of the plaintiffs' right of access to the search warrant materials does not satisfy the harm element for a retaliation claim.

Because the plaintiffs have used the courts to assert their rights, their claim that the defendants denied them access to the courts is meritless.  They brought an Article 78 proceeding against Judge Pilewski, who signed the search warrant at issue in this case, and sought leave to appeal the Appellate Division's denial of that motion, which the Court of Appeals denied.  *Id.* And obviously, they have brought their claims in this Court.  Thus, they have not demonstrated that the defendants encumbered their right of access to this Court or any other.  *See, e.g.*, *Oliva v. Town of Greece*, 630 F. App'x 43, 45 (2d Cir. Nov. 17, 2015) (summary order) (a plaintiff must

show "that the defendant took or was responsible for actions that had the actual effect of frustrating the plaintiff's effort to pursue a legal claim") (collecting cases); *Mahon v. Moultrie*, 657 F. App'x 52, 53 (2d Cir. Aug. 24, 2016) (summary order) ("To state a claim of denial of court access, a plaintiff must allege . . . that the defendant's actions resulted in actual injury to the plaintiff.").  "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Searle v. Red Creek Cent. Sch. Dist.*, No. 22-2049-CV, 2023 WL 3398137, at *2 (2d Cir. May 12, 2023) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)).

The plaintiffs cite cases holding that under certain circumstances "actual chilling" is not required to state a claim for retaliation.  (ECF No. 64 at 31 (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004)).  "Various non-speech related harms are sufficient to satisfy the third requirement for a First Amendment retaliation claim, including a lost government contract, additional scrutiny at a border crossing, revocation of a building permit, and a refusal to enforce zoning laws." *O'Reilly v. Inc. Vill. of Rockville Ctr.*, No. 23-CV-4249, 2024 WL 3328590, at *9 (E.D.N.Y. July 8, 2024) (alterations accepted and internal quotations omitted); *see also Searle*, 2023 WL 3398137, at *2 ("[I]n limited contexts, other forms of harm have been accepted in place of this 'actual chilling' requirement" to state a claim for retaliation." (quoting *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011)).  But the plaintiffs cite no cases — and the Court is aware of none — that suggest that a plaintiff has a right to a timely or favorable IAB ruling.  (*See* ECF No. 64 at 31–32.)  Accordingly, the complaint does not state a claim for retaliation.

> **d.     Claims Relating to the Warrant[9]**

The plaintiffs assert that Parker "deliberately misl[ed]" Justice Pilewski in the affidavit in support of the search warrant.  (ECF No. 34 ¶¶ 131, 134.)  The plaintiffs further allege that Nash knew that Parker misled the judge but did not correct the error.  (*Id.*)  Specifically, the plaintiffs claim that the Parker Affidavit made Justice Pilewski believe that Anuedis Garces-Medrano lived at 361 Flamingo Avenue.  (*Id.* ¶¶ 131–34, 140–41.)  But a review of the affidavit, which is incorporated by reference into the complaint, belies the plaintiffs' claim.  Parker swore in the affidavit that "Garces-Medrano, up until approximately one month ago, resided at" 361 Flamingo Avenue, and that he was living elsewhere in October 2022.  (ECF No. 44-2 at 7.)  The plaintiffs do not argue that this statement was false.[10]  Instead, they contend that it was a material omission not to alert the judge that the search warrant incorrectly stated that "361 Flamingo Avenue is believed to be occupied by Anuedis Garces-Medrano."  (ECF No. 34-3 at 2.)  As a result of that error, the plaintiffs claim, the search warrant was not based on probable cause, and the ensuing search was unlawful.  (*See* ECF No. 34 ¶ 144; ECF No. 64 at 32–33.)

The plaintiffs assert three claims related to the search warrant: (1) unreasonable seizure, asserting that law enforcement detained them unlawfully during the execution of the search warrant; (2) violation of due process; and (3) malicious abuse of criminal process.  The

---

[9] The plaintiffs' request that the Court declare no-knock warrants unconstitutional is denied.  "No-knock warrants . . . are constitutional and permitted by New York law."  *Sanders v. City of Rochester*, 360 F. Supp. 3d 152, 163 (W.D.N.Y. 2019) (citing N.Y. C.P.L. § 690.35(4)(b)); *see also Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 467 n.5 (S.D.N.Y. 2008) ("The constitutionality, in appropriate cases, of no-knock search warrants is clearly established." (citing *United States v. Banks*, 540 U.S. 31, 36 (2003)).

[10] Although the complaint alleges that Parker fabricated evidence in the affidavit (*see, e.g.*, ECF No. 34 ¶ 1), the plaintiffs do not argue that the affidavit, as sworn, is false.  The Court considers the affidavit because the plaintiffs incorporated it into the complaint.  *See Goel*, 820 F.3d at 559.

plaintiffs' allegations of personal involvement are adequate only as to Parker, Nash and the Does; the warrant claims against the other defendants are dismissed.

As explained below, moreover, because "there was no underlying constitutional violation, there is also no supervisory liability." *Raspardo v. Carlone*, 770 F.3d 97, 129 (2d Cir. 2014). Finally, there are no colorable allegations of a constitutional violation related to the warrant because the plaintiffs do not state a claim against Parker, Nash or the Does under the Fourth Amendment or the Fourteenth Amendment, or against Parker and Nash for malicious abuse of process.[11]

### i.    Unreasonable Search and Seizure

"The Fourth Amendment prohibits 'unreasonable searches and seizures.'" *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017) (quoting U.S. Const. amend. IV). "[A] search pursuant to a warrant issued by a judicial officer upon a finding of probable cause is presumptively reasonable." *Siddiqui v. Rocheleau*, 818 F. App'x 20, 22 (2d Cir. 2020) (summary order) (quoting *Ganek*, 874 F.3d at 81); *see also Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) ("The existence of probable cause will defeat a claim of . . . unreasonable search and seizure."). Officers executing a search warrant are authorized "to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981); *see also Rivera v. United States,* 928 F.2d 592, 606 (2d Cir. 1991) ("Absent special circumstances, the police of course have the authority to detain occupants of premises

---

[11] It is not at all obvious that the plaintiffs asserted a due process claim separate from the malicious abuse of process claim. A "malicious abuse of process violates procedural due process rights protected by the Fifth and Fourteenth Amendments." *Williams v. Young*, 769 F. Supp. 2d 594, 603 (S.D.N.Y. 2011). The plaintiffs' due process claims related to the warrant are duplicative of the malicious abuse of process claim or otherwise controlled by the Court's holding that there was probable cause to search the residence.

while an authorized search is in progress, regardless of individualized suspicion.").  Moreover, "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'"  *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (quoting *Summers*, 452 U.S. at 705 n.19). Accordingly, it is not unreasonable for an officer executing a facially valid search warrant to detain someone for the time it takes to conduct the search.  *See, e.g.*, *Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 403 (S.D.N.Y. 2009) (detention "was not unreasonable when it lasted for the duration of a search . . . some two to three hours" (citing *Muehler*, 544 U.S. at 100)).

Given the categorical nature of an officer's right to detain an individual incident to a search warrant, the plaintiffs' detention in this case was unreasonable only if the plaintiffs overcome the presumption of reasonableness and establish that the warrant was defective.  The "presumption can be defeated by showing that a defendant (1) 'knowingly and deliberately, or with a reckless disregard of the truth,' procured the warrant, (2) based on 'false statements or material omissions,' that (3) 'were necessary to the finding of probable cause.'"  *Ganek*, 874 F.3d at 81 (quoting *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994)).

In this case, as noted above, it is undisputed that Parker's statements in the affidavit were accurate and truthful.  However, while Parker stated in the warrant application that the target of the investigation, Anduedis Garces-Medrano, moved out of 361 Flamingo Avenue a month earlier, the warrant itself suggested that he still lived there: "361 Flamingo Avenue is believed to be occupied by Anuedis Garces-Medrano."  (ECF No. 34-3 at 2.)  To plead a Fourth Amendment violation under these circumstances, the plaintiffs would have to allege that the detective, who swore to the contents of an affidavit free of false statements, nevertheless deliberately misled

Judge Pilewski, by material omission or concealment, into signing a warrant that had, in addition to the accurate basis, an erroneous basis justifying probable cause. Nothing in the complaint as pled establishes that this is so. *Cf. Washington v. Napolitano*, 29 F.4th 93, 105 (2d Cir. 2022) ("It is clearly established in this Circuit that . . . a concealment, which deprives the judge of material information that could impact the probable cause determination, would not be protected by qualified immunity.")

"[P]robable cause to search exists where circumstances indicate a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Ganek*, 874 F.3d at 82 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).[12] "[W]here an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, as where a material omission is intended to enhance the contents of the affidavit as support for a conclusion of probable cause, the shield of qualified immunity is lost." *Washington*, 29 F.4th at 105 (quoting *Golino v. City of New Haven*, 950 F.2d 864, 871 (2d Cir. 1991)). To determine whether a false statement or omission was necessary to a finding of probable cause, the Court must "consider a hypothetical corrected affidavit, produced by deleting any alleged misstatements from the original warrant affidavit and adding to it any relevant omitted information." *Id.* (quoting *Ganek*, 874 F.3d at 82). If the hypothetical, corrected affidavit establishes an "objective basis to support arguable probable cause," then the omission or false statement was not necessary to the judicial determination, and there was no constitutional violation. *Ganek*, 874 F.3d at 82. And even if the material omission were necessary to the finding of probable cause, the officers executing the search would still be

---

[12] As the County defendants explain, the plaintiffs confuse probable cause necessary for an arrest with probable cause necessary for a search. (ECF No. 65 at 3 (quoting *Ganek*, 874 F.3d at 82).)

entitled to qualified immunity because "a similarly situated law enforcement official could have held an objectively reasonable — even if mistaken — belief that the corrected affidavit demonstrated the necessary probable cause." *Id.* (citing *Escalera v. Lunn*, 361 F.3d 737, 744 (2d Cir. 2004)).

In this case, there is no need for the Court to craft a "hypothetical affidavit," because the contents of the actual affidavit are accurate. The question is whether the error in the warrant — the statement that the target still lived at the plaintiffs' address — was necessary to establish probable cause. The Court holds that it was not, because the contents of Parker's affidavit provide an "objective basis to support arguable probable cause" — that is, that the "circumstances indicate a fair probability that contraband or evidence of a crime will be found in a particular place." *Ganek*, 874 F.3d at 82 (internal quotations omitted).

Parker swore to the following statements about 361 Flamingo Avenue: (1) the property had been used in furtherance of drug trafficking; (2) "Garces-Medrano, up until approximately one month ago, resided at this location with others known to be involved in this illicit operation;" (3) pole cameras set up around the house captured pedestrian and vehicle traffic over the previous months consistent with drug sales; and (4) during a controlled purchase, the seller left from 361 Flamingo Avenue to meet the undercover buyer and returned to that address immediately after the sale. (ECF No. 44-2 at 2.) These facts provide an objective basis to support a fair probability that contraband or evidence of a crime would be found at 361 Flamingo Avenue. Therefore, the warrant was based on probable cause.

Because the search warrant was valid, the plaintiffs' claim that Campoverde, Jimenez and J.M. were unlawfully detained while the warrant was executed must also fail. As explained above, officers executing a search warrant are authorized "to detain the occupants of the

premises while a proper search is conducted." *Muehler*, 544 U.S. at 98.  Nor is there merit to the plaintiffs' suggestion that a different analysis applies to Garcia Jiminez because she arrived at the address during the execution of the warrant and was not permitted to go inside.  The plaintiffs cite *Bailey v. United States*, 568 U.S. 186, 199 (2013) for the proposition that officers' authority to detain is limited to the people in "the immediate vicinity of the premises to be searched," but the Court also envisioned exactly the scenario that occurred here when it observed, "[i]t is likely, indeed almost inevitable in the case of a resident, that an occupant will return to the premises at some point; and this might occur when the officers are still conducting the search." *Id.* at 195. When that happens, the police can detain the occupant.  *Suren v. City of New York*, No. 19-CV-2659, 2022 WL 5414377, at *9 (E.D.N.Y. Aug. 8, 2022) (citing *Bailey*, 568 U.S. at 196), *report and recommendation adopted as modified,* No. 19-CV-2659, 2022 WL 4466098 (E.D.N.Y. Sept. 26, 2022).  In this case, the officers detained Garcia Jiminez, an occupant of the searched premises (*see* ECF No. 34 ¶ 56), outside the house while they finished the search.

Because the plaintiffs do not allege a colorable constitutional violation based on their detention, their Fourth Amendment unlawful search claims are dismissed.

### ii.    *Malicious Abuse of Criminal Process*

The plaintiffs also allege that securing the search warrant was malicious abuse of criminal process, but do not sufficiently allege that any defendant used criminal process to obtain a collateral objective.  Accordingly, they do not state a claim on which relief can be granted.

"[W]here the process alleged to have been abused is criminal in nature, an adequately pled claim for malicious abuse of process is 'by definition a denial of procedural due process,'" which may be asserted under § 1983.  *Peter L. Hoffman, Lotte, LLC v. Town of Southampton*, 523 F. App'x 770, 771 (2d Cir. 2013) (summary order) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80

(2d Cir.1994)).  To state a malicious abuse of process claim under New York law, a plaintiff must plead that a defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse [or] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Cook*, 41 F.3d at 80).

The complaint pleads that only Parker, Nash, and the Does were personally involved in obtaining and executing the warrant.[13]  To support their claim that these defendants "abused the Search Warrant to obtain personal gratification and to obtain personal and professional advantages," the plaintiffs allege that the defendants: stole  $14,000, used "overly aggressive physical and verbal conduct" to prove their "worthiness" to other officers, "employ[ed] excessive force," separated J.M. from her mother, "gratuitously tortur[ed]" the plaintiffs, and issued press statements "exaggerating" the nature of the investigation.  (ECF No. 34 ¶ 177.)

They do not allege, however, that any defendant procured the warrant with the intent to harm the plaintiffs.  Nor do they allege a collateral objective "*outside* the legitimate ends of the process."  *Savino*, 331 F.3d at 76 (emphasis added).  Instead, they cite alleged conduct incident to and intertwined with the legal search based on probable cause as the collateral objective of the search.  Allegations like this cannot form the basis of a malicious abuse of process claim.  *See, e.g.*, *Vessa v. City of White Plains*, No. 12-CV-6989, 2014 WL 1271230, at *8 (S.D.N.Y. Mar. 27, 2014) (dismissing malicious abuse of process claim even where the plaintiff alleged an

---

[13] "[T]he Second Circuit has emphasized that the 'gist of abuse of process is the improper use of process *after* it is regularly issued.'"  *Baron v. Lissade*, No. 19-CV-6256, 2021 WL 4407836, at *6 (E.D.N.Y. Sept. 27, 2021) (emphasis in original) (quoting *Cook*, 41 F.3d at 80).  Accordingly, the Court declines to hold that Nash is absolutely immune from an abuse of process claim.

"improper motive" and "intent to harass and embarrass him" because "such allegations do not suggest that Defendants acted with an ulterior *purpose* or *objective,* but merely with an improper *motive,* which is not actionable" (emphasis in original)), *aff'd,* 588 F. App'x 9 (2d Cir. 2014); *see also Caraballo v. City of New York*, 726 F. Supp. 3d 140, 167 (E.D.N.Y. 2024) ("Examples of a collateral objective include the infliction of economic harm, extortion, blackmail, and retribution." (internal citation and quotation omitted)). Accordingly, the abuse of process claims are dismissed.

### e.    Excessive Force Claims

The plaintiffs allege that the Doe defendants handcuffed Campoverde and Jiminez too tightly during the search and used a battering ram on a bathroom door that hit Jiminez, injuring his foot.  (ECF No. 34 ¶¶ 48, 49, 51, 151.)

The Fourth Amendment prohibits a police officer from using "unreasonable and therefore excessive force." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).  "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *B. v. City of New York*, No. 14-CV-1021, 2016 WL 4530455, at *10 (E.D.N.Y. Aug. 29, 2016) (quoting *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004)).  "Examining the reasonableness of the force used 'requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the plaintiff] is actively resisting [detention] or attempting to evade [detention] by flight." *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 148–49 (2d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

An "officer[ ] executing a search warrant for contraband [has] the authority 'to detain the occupants of the premises while a proper search is conducted.'"  *Muehler*, 544 U.S. at 98 (quoting *Summers*, 452 U.S. at 705).  "Inherent in [this] authorization . . . is the authority to use reasonable force to effectuate the detention."  *Id.* at 98–99.  "Although a *de minimis* use of force will rarely suffice to state a constitutional claim, it is the force used, not the injuries caused, which must be determined to be *de minimis* as a matter of law."  *Harding v. Gould*, No. 22-CV-6285, 2024 WL 3742688, at *6 (S.D.N.Y. Aug. 9, 2024) (internal quotations and citations omitted); *see also Ketcham*, 992 F.3d at 150 ("The fact that [the plaintiff's] injuries were not severe is insufficient to merit summary judgment.").

"Given 'the fact-specific nature of the inquiry on an excessive force claim,' such claims are often not amenable to early resolution."  *Ayers v. Suffolk Cnty. Dist. Att'y Off.*, No. 20-CV-1192, 2022 WL 4539580, at *4 (E.D.N.Y. Sept. 28, 2022) (quoting *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020)); *see id.* (denying motion to dismiss an excessive force claim).  Indeed, "the question of whether the use of force was reasonable under the circumstances is generally best left for a jury to decide."  *Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020); *see also Phillips v. City of Middletown*, 2018 WL 4572971, at *3 (S.D.N.Y. Sept. 24, 2018) ("When courts grant motions to dismiss an excessive force claim, it is because the force used was objectively reasonable as a matter of law." (internal citation omitted)).

     *i.*     *The Handcuffing*

The Second Circuit has held that "unnecessary handcuff tightening . . . can constitute excessive force."  *Ketcham*, 992 F.3d at 150 (citing *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019)).  "With respect to the handcuffing, 'the question is . . . whether an officer reasonably should have known during handcuffing that his use of force was excessive.'"

*Ketcham*, 992 F.3d at 150 (quoting *Cugini*, 941 F.3d at 613).[14]  A plaintiff may satisfy this requirement "if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff[s] signaled [their] distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both." *Cugini*, 941 F.3d at 613.

Campoverde and Jiminez allege that they were handcuffed for more than three hours, that the handcuffs were too tight, that they complained to the officers, and that the officers did not loosen the cuffs.  (ECF No. 34 ¶ 51.)  The complaint further alleges that the handcuffing "injured [Camponverde's] shoulder."  (*Id.* ¶¶ 48, 51.)[15]

These facts, at this stage of the litigation, accepted as true, are sufficient to create a plausible inherence that the Doe defendants used excessive force when they handcuffed Jiminez and Campoverde.[16]

### ii.    The Foot Injury

Courts in this district have explained that "using a battering ram to enter a dwelling pursuant to a valid warrant is not excessive force absent some indication of harmful bodily contact in making the entry." *Lewis v. Bureau of Alcohol, Tobacco & Firearms*, No. 16-CV-

---

[14] Earlier district court cases holding that handcuffing injuries "must be more than merely *de minimis*" to establish an excessive force claim (*see Christian v. Kelly*, No. 14-CV-7416, 2016 WL 3162056, at *3 (E.D.N.Y. June 3, 2016) (collecting cases)), appear to be inconsistent with *Ketcham.*

[15] The Court does not include in this list the hyperbolic claims that the officers "torture[d]" the plaintiffs and "sadistically laughed at them as they suffered."  (ECF No. 34 ¶ 51.)

[16] Because none of the parties cited *Ketcham* in their briefs, the Court asked at oral argument for supplemental briefing on the case.  The County defendants argue that, notwithstanding *Ketcham*, the plaintiffs' excessive force claims should be dismissed because "Campoverde and Jimenez do not plausibly allege that the handcuffs were tight enough to cause pain, and they do not assert that they told any officers that the handcuffs were hurting them."  (ECF No. 74 at 3.)  But the County defendants do not cite any cases that post-date *Ketcham* or otherwise distinguish that controlling precedent.  *See Yusuf v. City of New York*, No. 15-CV-5545, 2022 WL 393882, at *10 (E.D.N.Y. Feb. 9, 2022) (citing pre-*Ketcham* case law); *Jeanty v. City of New York*, No. 23-CV-9472, 2024 WL 5236462, at *26 (E.D.N.Y. Dec. 28, 2024) (same); *Suren*, 2022 WL 5414377, at *24 (same).  Additionally, two of these cases addressed motions for summary judgment, where the courts had the benefit of developed factual records.  *See Yusuf*, 2022 WL 393882, at *1; *Suren*, 2022 WL 5414377, at *1.

1057, 2018 WL 4853043, at *9 (E.D.N.Y. Oct. 4, 2018); *see also Archer v. Chisholm*, 870 F.3d

603, 619 (7th Cir. 2017) (officers did not use excessive force in executing a search warrant by

bringing a battering ram and entering the home with guns drawn, where the battering ram was

not used and officers quickly holstered their weapons); *cf. Harte v. Bd. of Comm'rs of Cnty. of

Johnson, Kansas*, 864 F.3d 1154, 1192 (10th Cir. 2017) (Phillips, J., concurring) (using a

"battering ram to execute a [search] warrant on a family with no criminal history in an ordinary

residential neighborhood" was "unreasonably extreme" under the circumstances).

Jiminez alleges that a Doe officer "used a battering ram" to "barge" through an "unlocked

bathroom door," which hit Jiminez and cut his foot.  (ECF No. 34 ¶ 49.)  On a motion to dismiss,

these allegations are sufficient to state a claim for excessive force.

The Court is not persuaded by the County defendants' arguments to the contrary.  First,

they say that any use of force that caused Jiminez's injury was not intentional and therefore not

actionable because the Fourth Amendment "only protects individuals against 'unreasonable'

seizures, not seizures conducted in a 'negligent' manner." (ECF No. 74 at 3 (quoting *Dodd v.

Norwich*, 827 F.2d 1, 7-8 (2d Cir. 1987).)  The plaintiffs allege, however, that the defendants

intentionally used a battering ram to get into the bathroom, and it was that action that caused the

injury.  That is sufficient at the complaint stage.  Second, the County defendants contend that this

claim must be dismissed because Jiminez "does not plausibly allege sustaining" any injury.  (*Id.*

at 4.)  In fact, he does allege an injury — a cut and bleeding foot.

Accepting the facts in the complaint as true, as the Court must, the plaintiffs have stated a

claim for excessive force.

f.    **Due Process Claims**

i.    *Stigma-Plus*

While defamation claims usually sound in state rather than constitutional law, a plaintiff may assert a procedural due process claim on the so-called "stigma plus" theory by alleging "a stigmatizing statement plus a deprivation of a tangible interest." *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (quoting *Algarin v. Town of Wallkill,* 421 F.3d 137, 138 (2d Cir. 2005)). Because of its unique application, a stigma-plus claim "involves an injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process." *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (internal quotations omitted). To plead this claim, a plaintiff must allege: "(1) 'the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) 'a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Vega*, 596 F.3d at 81 (quoting *Sadallah v. City of Utica,* 383 F.3d 34, 38 (2d Cir. 2004)). The 'stigma' and the 'plus' may issue from different government actors at different times, but the complaint must still allege the elements are "sufficiently proximate." *Velez v. Levy,* 401 F.3d 75, 89 (2d Cir. 2005). Because the claim is a species of a due process claim, "the availability of adequate process defeats a stigma-plus claim." *Segal*, 459 F.3d at 213.

The plaintiffs do not satisfy the "threshold requirement" that a government actor made "a reputation-tarnishing statement that is *false*." *Vega*, 596 F.3d at 82 (emphasis in original). The complaint merely alleges — on information and belief — that during a press release Tierney "displayed cash taken" from 361 Flamingo Avenue, which "link[ed]" the plaintiffs to individuals arrested for drug crimes. (ECF No. 34 ¶¶ 166–67; *see also* ECF No. 34-14 (Tierney press

33

release).)  But Tierney did not identify any of the plaintiffs or the location of the search.[17]

Indeed, nothing in Tierney's statement "designates the plaintiff[s] in such a way as to let those

who knew [them] understand" that they were the people to whom the statement referred.

*Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 629 (E.D.N.Y. 2018) (quoting

*Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 925 (2d Cir. 1987)).

It is not necessary to go further, but the plaintiffs have additionally not sufficiently pled a

"plus."  "Burdens that have been found to satisfy the 'plus' element of a stigma plus claim

include the loss of a protected property interest or a statutorily-granted privilege, such as

termination of government employment, loss of the right to purchase alcohol, loss of the right to

public education, and deprivation of property."  *Worrell v. City of New York*, No. 12-CV-6151,

2014 WL 1224257, at *5 (E.D.N.Y. Mar. 24, 2014) (collecting cases).  The plaintiffs claim that

the seizure of cash itself satisfies the "plus" requirement.  (ECF No. 34 ¶ 168).  It does not.  The

seizure was conducted pursuant to adequate process, *see Ganek*, 874 F.3d at 91, and therefore

cannot form the basis of a stigma-plus claim, *Segal*, 459 F.3d at 213.  Second, the plaintiffs

maintain that the "plus" is their inability to pay for immediate therapy for J.M.  (ECF No. 34

¶ 170.)  But they do not have an entitlement to immediate therapy, and in any event cite no

authority for their theory.  Accordingly, the stigma plus claim is dismissed.

---

[17] "Where a complaint seeks to rely on . . . press releases to state a claim for relief, 'the Court takes judicial notice of [such documents], but for the limited purpose of establishing their existence and legal effect, and determining the statements that they contain without assuming the truth of those statements.'"  *Joseph v. Doe*, No. 16-CV-2004, 2017 WL 4233024, at *3 (E.D.N.Y. Sept. 22, 2017) (quoting *Li v. City of New York*, No. 15-CV-1599, 2017 WL 1208422, at *4 (E.D.N.Y. Mar. 31, 2017)).

    ii. *Deprivation of Property*

  The plaintiffs' next assert that officers seized $14,000, along with various other items, without giving them due process. "To sustain a procedural due process claim under the Fourteenth Amendment, a plaintiff must allege 'that [s]he: (1) had a protected liberty or property interest and (2) was deprived of that interest without due process.'" *Harris v. City of New York*, No. 16-CV-1214, 2018 WL 4471631, at *10 (E.D.N.Y. Sept. 18, 2018) (quoting *Johnson v. City of New York*, No. 16-CV-2879, 2018 WL 1175139, at *3 (E.D.N.Y. Mar. 5, 2018)). "In evaluating what process satisfies the Due Process Clause, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Poole v. Hawkins*, No. 18-CV-443, 2021 WL 695119, at *4 (E.D.N.Y. Feb. 23, 2021) (cleaned up) (quoting *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006)). "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy." *Id.* "In the context of property seized pursuant to a search warrant, adequate postdeprivation remedies satisfy procedural due process." *Best v. Monaco*, No. 09-CV-5260, 2010 WL 1438756, at *1 (E.D.N.Y. Apr. 5, 2010).

  The plaintiffs identify the execution of the warrant as the conduct that deprived them of due process. (ECF No. 64 at 35.) But the execution of a search warrant supported by probable cause was an established state procedure, not a "random, unauthorized act[] by state employees." *Poole*, 2021 WL 695119, at *4. In these circumstances, it was the process to which the plaintiffs were due. *Ganek*, 874 F.3d at 91 (dismissing procedural due process claim where "the only property loss alleged to have occurred without due process resulted from seizures made during the challenged search[,]" which was "supported by probable cause, the only process due").

Courts in this district have consistently held that New York state law provides individuals in the plaintiffs' position with meaningful post-deprivation remedies.  *See Poole*, 2021 WL 695119, at *4 (dismissing due process claim premised on deprivation of property at motion to dismiss stage because the plaintiff could have brought suit in the Court of Claims); *Harris*, 2018 WL 4471631, at *10 (same); *Best*, 2010 WL 1438756, at *1 ("If no criminal prosecution is pending, a property owner may either file an action for replevin or a CPLR '[A]rticle 78 proceeding to review a refusal after demand.'" (quoting *Boyle v. Kelley*, 42 N.Y.2d 88 (1977)). The due process claims about the plaintiffs' property are dismissed.

### g.    Failure to Intercede

"A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016).  The plaintiffs allege that Doe officers saw and did not intercede in the excessively forceful handcuffing and the use of the battering ram.  (ECF No. 34 ¶¶ 49, 51.)  These allegations — together with the Court's analysis of the plaintiffs' excessive force claim — are sufficient to plead a failure to intercede to prevent excessive force.

However, "[a] failure to intervene claim does not exist when the underlying constitutional claim has been dismissed." *McMillan v. Cap. One Bank, N.A.*, No. 20-CV-7981, 2022 WL 799661, at *6 (S.D.N.Y. Mar. 16, 2022) (quoting *Bridgeforth v. City of New York*, No. 16- CV-273, 2018 WL 3178221, at *12 (S.D.N.Y. June 28, 2018)).  Accordingly, the Court dismisses any failure to intercede connected to dismissed claims.

h.    *Monell* **Liability**

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  However, under *Monell*,

"[m]unicipalities may be sued directly under section 1983 for constitutional deprivations

imposed upon the plaintiff pursuant to a 'governmental custom, policy, or usage of the

municipality.'"  *Greene v. City of New York*, No. 08-CV-243, 2017 WL 1030707, at *29

(E.D.N.Y. Mar. 15, 2017)*, aff'd,* 742 F. App'x 532 (2d Cir. 2018) (quoting *Jones v. Town of E.

Haven*, 691 F.3d 72, 80 (2d Cir. 2012)).  It is not enough for the plaintiffs to allege the existence

of a municipal policy or custom.  *Gazzola*, 2016 WL 6068138, at *6.  Instead, to survive a

motion to dismiss, a plaintiff "must allege facts tending to support, at least circumstantially, an

inference that . . . a municipal policy or custom exists." *McLennon v. City of New York*, 171 F.

Supp. 3d 69, 95 (E.D.N.Y. 2016) (quoting *Santos v. New York City*, 847 F.Supp.2d 573, 576

(S.D.N.Y. 2012)).  "A plaintiff can establish an official policy or custom by showing any of the

following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions

made by municipal officials with decision-making authority; (3) a practice so persistent and

widespread that it constitutes a custom of which policymakers must have been aware; or (4) a

failure by policymakers to properly train or supervise their subordinates, such that the

policymakers exercised 'deliberate indifference' to the rights of the plaintiff and others

encountering those subordinates." *Id.*

The law in the Second Circuit is that "isolated acts by non-policymaking municipal

employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that

would justify municipal liability." *Carmichael v. City of New York*, 34 F.Supp.3d 252, 263, 2014

WL 3818192, at *7 (E.D.N.Y. Aug. 1, 2014) (cleaned up) (quoting *Jones v. Town of E. Haven*,

691 F.3d 72, 81 (2d Cir.2012)).  "[I]t is well established that a single incident does not give rise

to an unlawful practice by subordinate officials 'so permanent and well-settled as to constitute custom or usage.'" *Plair v. City of New York*, 789 F. Supp. 2d 459, 470 (S.D.N.Y. 2011) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)) (second quotation marks omitted); *see also Sorlucco v. New York City Police Department*, 971 F.2d 864, 870 (2d Cir. 1992) (municipality may not be held liable under Section 1983 for isolated unconstitutional acts of its employees) (citing *Monell*, 436 U.S. at 694); *Anderson v. City of New York*, 657 F. Supp. 1571, 1574 (S.D.N.Y. 1987) ("[The] plaintiff cannot infer a policy from the alleged violation of his own civil rights."). "This limitation extends to failure-to-train claims." *Wilson v. City of New York*, No. 18-CV-2262, 2021 WL 5908860, at *7 (E.D.N.Y. Dec. 14, 2021) (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

The necessary first step to pleading a *Monell* claim is to identify a constitutional violation by a municipal actor. The plaintiffs fall short of this threshold step with respect to everything except the excessive force and failure to intercede claims. And as to those issues, the complaint does no more than simply state that it was the policy and custom of the municipal defendants to use excessive force when handcuffing detainees. (ECF No. 34 ¶¶ 51, 210.) The plaintiffs do not allege any facts that support, even circumstantially, that any such policy exists. Therefore, their *Monell* claims and failure to train claims must be dismissed.

## II.    State Law Claims

The plaintiffs also assert state law claims, including: (i) assault and battery (ECF No. 34 ¶ 183), (ii) negligence (*id.* ¶ 184–85), (iii) conversion (*id.* ¶ 186), and (iv) intentional and negligent infliction of emotional distress (*id.* ¶¶ 187–200). The complaint explains that these claims are levied against only the "County's and Town' Defendants." (*Id.* ¶ 182.) The Court construes this to mean the Doe defendants and the municipalities.

As an initial matter, the Town defendants argue that all state law claims should be dismissed against them because the plaintiffs did not comply with the notice of claim requirements.

In general, § 50-e of the New York General Municipal Law ("GML") requires a plaintiff seeking to bring a tort action against a municipality to file a notice of claim within ninety days after the claim arises.  N.Y. Gen. Mun. Law § 50-e(a).  The notice triggers a municipality's "right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made."  *Id.* § 50-h(1).  "While compliance with GML § 50-h has been excused in exceptional circumstances, generally, '[a] party who [fails] to comply with a demand for examination pursuant to [GML] § 50-h is precluded from commencing an action against a municipality.'"  *Duncan v. City of New York*, No. 11-CV-3901, 2017 WL 3105856, at *5 (E.D.N.Y. July 21, 2017) (E.D.N.Y. July 13, 2018) (quoting *Kemp v. Cty. of Suffolk*, 61 A.D.3d 937, 938 (2d Dep't 2009)); *see also Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999) ("Failure to comply with [the notice of claim] requirements ordinarily requires a dismissal for failure to state a cause of action.").

The Town defendants argue that J.M. and Jiminez did not appear at their scheduled § 50-h hearing and that the plaintiffs' counsel interfered with the Campoverde's and Garcia Jiminez's examinations.  (ECF No. 47-7 at 9–11.)  But in order to evaluate these arguments, the Court would have to review the transcripts of the § 50-h hearings and the record of the demands.  And while the complaint refers to the hearings briefly, "reviewing the hearing transcript in and of itself seems an exercise that is better suited for a motion for summary judgment under Rule 56."  *Hazan v. City of New York*, No. 98-CV-1716, 1999 WL 493352, at *7 (S.D.N.Y. July 12,

1999).[18]  Accordingly, the Town defendants' motion to dismiss on this basis is denied without prejudice.

### a.  Assault and Battery

The plaintiffs' claim for assault and battery may proceed.

"The elements of New York assault and battery and Section 1983 excessive force claims are substantially identical." *Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021) (internal quotation omitted).  "Under both the state and federal standards, '[p]olice officers' application of force is excessive . . . if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Santiago v. City of Yonkers*, No. 21-CV-764, 2023 WL 2648649, at *8 (S.D.N.Y. Mar. 27, 2023) (quoting *Maxwell*, 380 F.3d at 108).  For the same reasons that the plaintiffs state a claim for excessive force related to the Doe officers' handcuffing and use of the battering ram, the complaint alleges sufficient facts for an assault and battery claim under New York law.  *See, e.g.*, *Scoma v. City of New York*, No. 16-CV-6693, 2021 WL 230295, at *14 (E.D.N.Y. Jan. 22, 2021) (denying motion for summary judgment on state law assault and battery claim related to excessive force in handcuffing for the same reasons as the motion was denied under § 1983).

The outcome of the defendants' argument that this claim is untimely depends on whether the plaintiffs properly noticed this claim in their notices of claim served on the County and Town defendants under GML § 50-e:  If the plaintiffs raised the assault and battery in the notice of claim, they may take advantage of the slightly-extended statute of limitations of GML § 50-i, which requires that a plaintiff who serves a notice of claim files suit "within one year and ninety

---

[18] By contrast, in deciding a motion to dismiss, a court may properly consider notices of claim that a plaintiff cites or attaches to a complaint.  *Hazan*, 1999 WL 493352, at *6.

days after the happening of the event upon which the claim is based." *See Meng Meng Lin v. City of New York*, No. 16-CV-2270, 2018 WL 4119207, at *9 (E.D.N.Y. Aug. 29, 2018) ("When an individual brings tort claims against the city, or against any employee indemnified by the city, the statute of limitations is one year and 90 days.").[19] The alleged conduct happened on October 5, 2022; thus, if the limitations period of § 50-i applies, the plaintiffs' assault and battery claim — commenced on December 26, 2023 — was timely filed.

The County defendants argue that notice of claim was deficient because it did not mention assault and battery. (ECF No. 44-4 at 19–20.) The plaintiffs respond that they noticed "all common law torts," detailed the place and time of the search, and stated that police officers caused "[p]hysical bodily injury." (ECF No. 64 at 38; *see also, e.g.*, ECF No. 34-6 (Campoverde Notice of Claim to County) at 2–3.) This is sufficient notice under the relevant standard, which requires "merely [that] the notice includes information sufficient to enable the [municipality] to investigate." *Martinez v. City of New York*, 564 F. Supp. 3d 88, 102 (E.D.N.Y. 2021) (alterations adopted) (quoting *Brown v. City of New York*, 95 N.Y.2d 389, 393 (2000)). Accordingly, the plaintiffs' assault and battery claim against the state officers is timely.

### b. Negligence

The plaintiffs assert common a law negligence claim, which they describe as "alternative claims." (ECF No. 34 ¶ 185.) To the extent this claim relates to the handcuffing excessive force and assault claim or any other claim against individual officers sounding in other traditional tort,

---

[19] "[S]ervice of a notice of claim upon [a municipality] is required, 'only if the [municipality] has a statutory obligation to indemnify [the employee]." *Farid v. City of New York*, No. 19-CV-3463, 2021 WL 2012425, at *8 (E.D.N.Y. May 20, 2021) (quoting *McGrath v. Arroyo*, 2019 WL 3754459, at *18 (E.D.N.Y. Aug. 8, 2019)). The parties do not raise this issue, and the Court assumes that the municipalities have such an obligation. *See Martinez v. City of New York*, 564 F. Supp. 3d 88, 101 (E.D.N.Y. 2021) (finding that the notice of claim requirements were applicable to an excessive force claim against police officers).

it must be dismissed. *See Dasrath v. City of New York*, No. 15-CV-766, 2018 WL 10501877, at *8 (E.D.N.Y. Sept. 25, 2018) ("When a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie.") (internal quotation omitted); *Stratakos v. Nassau Cnty.*, No. 15-CV-7244, 2019 WL 6699817, at *16 (E.D.N.Y. Dec. 9, 2019); *Durr v. Slator*, 558 F. Supp. 3d 1, 40 (N.D.N.Y. 2021).

To state a negligence claim under New York law, a plaintiff must prove: "a duty owed to the plaintiff by the defendant, a breach of that duty, and injury proximately resulting therefrom." *Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y.3d 150, 157 (2023); *see also Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023). "When a negligence claim is asserted against a municipality or its employees, the threshold inquiry is 'whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose.'" *Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013) (quoting *Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 425 (2013)). If the officers or municipality were acting in a governmental capacity, the plaintiff must plead a "special duty." *See Ferreira v. City of Binghamton*, 38 N.Y.3d 298, 310 (2022).

The plaintiffs cite *Ferreira v. City of Binghamton* at length. In that case, the Court of Appeals held that municipalities and their employees have a "special duty" when planning and executing no-knock search warrants. *Id.*

> In a no-knock warrant situation, the police exercise extraordinary governmental power to intrude upon the sanctity of the home and take temporary control of the premises and its occupants. In such circumstances, the police direct and control a known and dangerous condition, effectively taking command of the premises and temporarily detaining occupants of the targeted location. As a result, the municipality's duty to the individuals in the targeted premises, a limited class of potential plaintiffs, exceeds the duty the municipality owes to the members of the general public. A special duty therefore arises when the police plan and execute a

no-knock search warrant at an identified residence, running to the individuals within the targeted premises at the time the warrant is executed.

*Id.* at 318.  The complaint pleads that the search was executed pursuant to a no-knock warrant, and therefore the plaintiffs have sufficiently alleged a special duty running to the plaintiffs.  But they have only pled facts that give to a potential negligence action related to the fact that individual officers brought a battering ram to search the premises.

The facts of *Ferreira* are instructive.  In that case, an officer executing a no-knock search warrant shot the plaintiff in the stomach "immediately" after the door was breached.  *Ferreira v. City of Binghamton*, 975 F.3d 255, 263 (2d Cir. 2020).  Ferreira alleged that "negligent planning deficiencies rendered the search needlessly dangerous."  *Id.* at 276.  The plaintiffs in this case have not alleged anything that leads to a plausible inference that the no-knock search was negligently planned — most obviously, the plaintiff has not sufficiently alleged who planned the search or the negligent conduct that caused the injuries.  *See Flannery v. City of Rochester*, 640 F. Supp. 3d 267, 285 (W.D.N.Y. 2022) (allowing the plaintiffs' negligent planning claim to proceed against the officer who was in charge of planning the city's response to a protest); *Stone v. Town of Cicero*, No. 21-CV-1363, 2024 WL 1219691, at *21 (N.D.N.Y. Mar. 20, 2024) (in a negligence action, a plaintiff must "adduce a sufficient showing that causation is based on logical inferences to be drawn from the evidence, not upon speculation").

Thus, the plaintiffs may pursue a claim that the officer or officers negligently brought the battering ram, but they have not adequately alleged any other facts to support a negligence claim on any other theory.

### c.    Trespass and Conversion

The plaintiffs' claim for trespass and conversion must also be dismissed.  Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership

over goods belonging to another to the exclusion of the owner's rights." *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 414 (S.D.N.Y. 2018) (quoting *Thyroff v. Nationwide Mut. Ins.*, 460 F.3d 400, 403 (2d Cir. 2006)). Thus, to succeed on this claim, the plaintiffs' "would need to demonstrate that law enforcement acted without authority when it searched his residence and the surrounding property." *Stegemann v. State*, 163 A.D.3d 1303, 1303 (3d Dep't 2018). The search warrant clearly justified the officers' seizure of the items at issue, including cash that the officers reasonably believed were the proceeds of illegal activity. This conduct was therefore authorized and cannot form the basis of a conversion claim. *See Sanders v. City of Rochester*, 360 F. Supp. 3d 152, 164 (W.D.N.Y. 2019) (dismissing conversion claim based on seizure of items pursuant to a lawful warrant).

Moreover, the plaintiffs have not pleaded facts that show that Lillis or any other defendant converted the seized cash during the inventory process. "Where a defendant lawfully obtains possession of property and has not wrongfully disposed of it, the action is not maintainable unless the defendant had possession of the property at the commencement of the action." *Gonzalez v. Port Auth. of New York & New Jersey*, 119 A.D.2d 628, 629 (2d Dep't 1986). Here, the plaintiffs do not allege that Lillis — or any other defendant — possessed the cash when they initiated this action. And although they allege that Lillis was responsible for the money at some point, he transferred the property "in good faith." *Id.*

Indeed, "courts consistently find that the [state] judiciary retains exclusive jurisdiction to dispose of seized property under § 690.55." *Vaher v. Town of Orangetown, N.Y.*, 133 F. Supp. 3d 574, 607 (S.D.N.Y. 2015); *see also U.S. v. $490,920 in U.S. Currency*, 911 F.Supp. 720, 725 (S.D.N.Y. 1996) ("Even if the court directs another person to retain custody of the property, the property seized pursuant to a search warrant technically remains in the custody of the court, and

the District Attorney or property clerk possesses the property only as an officer of the court, subject to the court's direction and disposition.  New York's statutory scheme, therefore, provides that the disposition of the *res* is subject only to orders of the state court."); *LM Bus. Assocs., Inc. v. State*, 124 A.D.3d 1215, 1217–18 (4th Dep't 2015) ("[P]roperty seized pursuant to a court order . . . cannot be taken away until that custody is ended by a conviction or acquittal, or by an order of the magistrate permitting its surrender to the owner.  In other words, property seized pursuant to a search warrant remains in the control of the issuing judge.  Therefore, even if the seized [items] were retained without any legitimate law enforcement purpose, it was beyond the power of [defendant] to take the property from the custody of the law and return it to claimants without proper judicial authorization.").  Accordingly, the plaintiffs have not stated a claim for conversion against any individual defendant or the municipalities.

> **d.    Intentional and Negligent Infliction of Emotional Distress**

The plaintiffs' claims for intentional and negligent infliction of emotional distress fare no better.

"Under New York law, an intentional infliction tort may 'be invoked only as a last resort,' 'to provide relief in those circumstances where traditional theories of recovery do not.'" *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal citations omitted).  Therefore, an IIED claim fails "where the challenged conduct 'falls well within the ambit of other traditional tort liability,'" as it does here.  *Id.*  Moreover, the plaintiffs have not sufficiently alleged that the defendants' conduct went "beyond all possible bounds of decency," so as "to be regarded as atrocious, and utterly intolerable in a civilized community."  *Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46, 56 (2016); *see also Gazzola*, 2022 WL 2274710, at *15 (granting summary judgment for defendant in analogous circumstances).

45

"To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021). The Court has found no case extending the special duty recognized in *Ferreira v. City of Binghamton* to claims for negligent infliction of emotional distress. *See Green-Page v. United States*, No. 20-CV-837, 2024 WL 3584194, at *15 (W.D.N.Y. July 30, 2024) ("*Ferreira* has apparently never been applied in the context of an NIED claim and Plaintiffs have not alleged that the execution of the no-knock search warrant in this case was unreasonably dangerous due to negligent planning."). Thus, the plaintiffs have not sufficiently pled a duty.

Accordingly, these claims are dismissed.

## III.    Constitutional Challenges to New York Criminal Procedure Law

Finally, the plaintiffs ask the Court to declare unconstitutional New York Criminal Procedure Law §§ 245.20(7), 245.30, 690.50(4) and 690.50(5). In particular, the plaintiffs argue that (1) N.Y.C.P.L. §§ 245.20(7) and 245.30 are unconstitutional because they do not "include any procedural mechanism for a non-defendant person or media company to obtain access to 'judicial documents;'" and (2) N.Y.C.P.L. §§ 690.50(4) and 690.50(5) are unconstitutional because they do not expressly incorporate Federal Rule of Criminal Procedure 41(f)(B) and (C). (ECF No. 34 ¶ 246).

The Court declines the plaintiffs' request to rewrite New York State's criminal procedure law. A district court has "'broad discretion' to decline jurisdiction under the [Declaratory Judgment Act]." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023)

(internal citation omitted); *see also id.* at 91 ("[T]he DJA provides only that federal courts '*may* declare the rights and other legal relations of an[ ] interested party seeking such declaration' in 'a case of actual controversy' — not that they *must* so declare." (emphasis in original) (quoting 28 U.S.C. § 2201(a))).  The plaintiffs do not make any cogent arguments that the challenged provisions are unconstitutional, and the defendants have not briefed the merits of this issue. Under these circumstances, a declaration would not "serve a useful purpose in clarifying or settling the legal issues involved" and "concerns for 'judicial efficiency' and 'judicial economy' favor declining to exercise jurisdiction." *Id.* at 99–100 (internal citation omitted).

## IV.   Leave to Amend

The plaintiffs ask that the Court grant them leave to amend their amended complaint "to address any imperfections this Court identifies."  (ECF No. 64 at 48.)  "Leave to amend shall be freely given when justice so requires."  *In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021) (cleaned up).  But if a court has a "valid ground," such as futility or undue prejudice, the court may deny leave to amend.  *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018).

At this point, the plaintiffs have pleaded their claims "exhaustively."  *Thomas v. Amazon.com Servs. LLC*, No. 23-CV-1271, 2025 WL 253276, at *14 (E.D.N.Y. Jan. 21, 2025); *see Vasquez v. City of New York*, No. 22-CV-5068, 2024 WL 1348702, at *14 (E.D.N.Y. Mar. 30, 2024) (denying leave to amend).  The Court previously permitted the plaintiffs to amend the complaint; in addition, the Court described the significant deficiencies in the complaint, and

47

detailed the kinds of factual allegations the plaintiffs would need to make in order to defeat a motion to dismiss.  The plaintiffs seem to have ignored the Court's observations, because the amended complaint is almost identical to the original complaint.  In this situation, "the Court easily concludes that granting further leave to amend would be futile because there is no 'indication that a valid claim might be stated' as to those claims dismissed under Rule 12(b)(6)." *Thomas*, 2025 WL 253276, at *14 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

## CONCLUSION

The defendants' motions to dismiss the amended complaint are granted in part and denied in part.  The claims for excessive force under § 1983 and assault and battery against the Doe defendants may proceed, as may the negligence claim against the Doe defendants related to the use of a battering ram.  All other claims are dismissed.  The plaintiffs' motion to amend is denied.  The plaintiffs are directed to file a motion pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) within 30 days of this order.

**SO ORDERED.**

s/Ann M. Donnelly

_____
ANN M. DONNELLY
United States District Judge

Dated:  Brooklyn, New York
         March 28, 2025